FILED
Jul 25 2013, 6:16 am

CLERK
of the supreme court,
court of appeals and
tax court


**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**R.C. RICHMOND, III**
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JON L. ORLOSKY**
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FARMERS MUTUAL INSURANCE COMPANY OF GRANT AND BLACKFORD COUNTIES, | ) ) ) | |
| Appellant, | ) ) | |
| vs. | ) ) | No. 27A05-1211-MI-593 |
| M JEWELL, LLC, AUDITOR OF GRANT COUNTY, INDIANA and TREASURER OF GRANT COUNTY, INDIANA, | ) ) ) ) | |
| Appellee. | ) ) | |

**APPEAL FROM THE GRANT SUPERIOR COURT**
The Honorable Jeffrey D. Todd, Judge
Cause No. 27D01-1007-MI-702

**July 25, 2013**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

Farmers Mutual Insurance Company of Grant and Blackford Counties (Farmers Mutual) appeals from the trial court's order denying its petition to set aside a tax deed issued to M Jewell, LLC (Jewell). Farmers Mutual raises the following restated issue on appeal: Did the county auditor's failure to comply with the statutory provision governing notice of tax sales render the tax deed issued to Jewell void?

We reverse and remand with instructions.

In 1988, Farmers Mutual acquired title to a tract of over 112 acres of farmland in Grant County (the Farm Property). Due to a drafting error, the deed listed the owner of the Farm Property as "Farmers Mutual Insurance Company of Grant and Blackford Counties, *Inc.*", *Appellant's Appendix* at 46 (emphasis supplied), instead of Farmers Mutual Insurance Company of Grant and Blackford Counties.

After the deed was recorded, it was sent to the county auditor's office to be entered into the auditor's computer system by a transfer deputy. The software used by the auditor's office placed limitations on the amount of characters that could be entered per line, so the transfer deputies used abbreviations when entering grantees' names. As a result, the auditor's records listed the owner of the Farm Property as "Farmers Mutual Ins Co of Grant & Blackford Counties Inc". *Id.* at 54. Additionally, the auditor's records listed the owner's address as "PO Box 1388, Marion, IN 46952". *Id.*

In 2004, Farmers Mutual acquired another piece of property in Grant County located at 2125 S. Western Avenue in Marion (the Office Property). The deed conveying the Office Property correctly identified the grantee as "Farmers Mutual Insurance Company of Grant

2

and Blackford Counties." *Id.* at 56. The auditor's transfer deputies entered the name of the owner of the Office Property as "Farmers Mutual Insurance Co", and the mailing address listed for the owner was the same as the address of the Office Property. *Id.* at 51.

In June 2008, the P.O. box listed in the auditor's records as Farmers Mutual's mailing address for the Farm Property was closed. Any forwarding order for the P.O. box would have expired a year later in June 2009; thus, any mail sent to the P.O. box after that date would not have been placed in the P.O. box or forwarded to Farmers Mutual. After the P.O. box was closed, Farmers Mutual did not provide the county auditor or treasurer with a new mailing address. Accordingly, subsequent property tax statements mailed to the P.O. box were returned to the treasurer, and Farmers Mutual failed to pay taxes on the Farm Property. Due to the delinquent taxes, the auditor placed the Farm Property on the list of properties to be sold at tax sale on September 23, 2010. The auditor forwarded the list to SRI, Inc., the company hired by the auditor's office to provide notice of the tax sale.

On July 14, 2010, SRI sent notice of the tax sale by certified mail, return receipt requested, to "Farmers Mutual Ins Co Of" at the Marion P.O. Box. *Id.* at 37. The notice was returned to SRI marked "RETURN TO SENDER NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD". *Id.* Because the first notice was returned unclaimed, SRI sent a duplicate notice to "Farmers Mutual Ins Co Of", again at the P.O. box, but his time by regular first class mail. *Id.* at 42. The duplicate notice was also returned unclaimed.[1]

---

[1] Although the parties disputed at trial whether the duplicate notice was returned unclaimed to SRI, the trial court specifically found that it had been returned to SRI marked "RETURN TO SENDER NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD", like other items mailed to the P.O. box both

3

Thereafter, neither SRI nor the auditor's office made any further attempt to notify Farmers Mutual of the impending tax sale or find a more accurate address for Farmers Mutual.

The tax sale proceeded as scheduled on September 23, 2010, and Jewell purchased the Property for $5,508.98. A tax deed was issued to Jewell on November 9, 2011. Upon learning of the tax sale and deed, Farmers Mutual filed a petition to set aside the tax deed on February 27, 2012. A hearing was held on the petition on September 6, 2012, at the conclusion of which the trial court took the matter under advisement. On October 29, 2012, the trial court entered an order denying the petition. Farmers Mutual now appeals.

A person may defeat a tax deed only by proving one of the seven defects set forth in Ind. Code Ann. § 6-1.1-25-16 (West, Westlaw current through June 29, 2013, excluding P.L. 205-2013). *Swami, Inc. v. Lee*, 841 N.E.2d 1173 (Ind. Ct. App. 2006), *trans. denied*. I.C. § 6-1.1-25-16 provides, in pertinent part, that a person may defeat a tax deed if "the notices required by . . . IC 6-1.1-24-4 . . . were not in substantial compliance with the manner prescribed in those sections." This court has noted that "the proper procedure for appealing the issuance of a tax deed is found in Ind. Trial Rule 60[.]" *Kessen v. Graft*, 694 N.E.2d 317, 320 (Ind. Ct. App. 1998), *trans. denied*. Accordingly, although not expressly styled as such, Farmers Mutual's motion to set aside the tax deed is a motion for relief from judgment pursuant to T.R. 60(B). *See Lindsey v. Neher*, 988 N.E.2d 1207 (Ind. Ct. App. 2013).

---

before and after the duplicate notice, and in accordance with United States Post Office regulations. *Appellant's Appendix* at 25. This record supports this finding by inference, and Jewell does not contest it on appeal.

4

T.R. 60(B)(6) provides that a trial court may relieve a party from the entry of judgment if the judgment is void. "Failure to comply substantially with statutes governing tax sales renders void subsequent tax deeds which deprive owners of their property." *Lindsey v. Neher*, 988 N.E.2d at 1210 (quoting *Kessen v. Graft*, 694 N.E.2d at 320). As a general matter, a trial court's ruling on a T.R. 60(B) motion is reviewed for an abuse of discretion. *Rice v. Comm'r, Ind. Dep't of Envtl. Mgmt.*, 782 N.E.2d 1000 (Ind. Ct. App. 2003). A ruling under T.R. 60(B)(6), however, "requires no discretion on the part of the trial court because either the judgment is void or it is valid." *Id.* at 1003 (quoting *Hotmix v. Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 826 (Ind. Ct. App. 1999)).

We also note that the trial court entered special findings and conclusions pursuant to Indiana Trial Rule 52(A). Accordingly, we apply a two-tiered standard of review to those findings and the resulting judgment: we must first determine whether the evidence supports the findings and then whether the findings support the judgment. *Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213 (Ind. 2012). We will not set aside the trial court's findings unless they are clearly erroneous, and in making that determination, we will neither reweigh the evidence nor reassess the credibility of witnesses. *Id.* We will view the evidence in the light most favorable to the judgment and defer to the trial court's factual findings if they are supported by the evidence or legitimate inferences therefrom. *Id.* The trial court's legal conclusions, on the other hand, are reviewed *de novo*. *Id.* "A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts." *Id.* at 217 (quoting *Nichols v. Minnick*, 885 N.E.2d 1, 3 (Ind. 2008)).

"If an owner of real estate fails to pay the property taxes, the property may be sold in order to satisfy the tax obligation." *In re 2007 Tax Sale in Lake Cnty*., 926 N.E.2d 524, 527 (Ind. Ct. App. 2010). Tax sale proceedings, however, must comport with the due process requirements of the United States Constitution. *Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213. Thus, prior to conducting a tax sale, notice must be provided to one who may be deprived of a property interest. *Lindsey v. Neher*, 988 N.E.2d 1207; *see also Jones v. Flowers*, 547 U.S. 220, 223 (2006) (noting that "[b]efore a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case'" (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 399 U.S. 306, 313 (1950)). Additionally, in *Jones v. Flowers*, the United States Supreme Court held that "when mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." 547 N.E.2d at 225.

In keeping with these constitutional requirements, the General Assembly has enacted an extensive statutory framework governing tax sales and requiring notice to the property owner at various stages of the process. "The tax sale process is purely a statutory creation and requires material compliance with each step of the governing statutes . . . ." *In re 2007 Tax Sale in Lake Cnty*., 926 N.E.2d at 527. Although issuance of a tax deed creates a presumption that a tax sale and all the steps leading up to the issuance of the deed were

6

conducted in compliance with the applicable statutes, this presumption may be rebutted by affirmative evidence to the contrary. *In re 2007 Tax Sale in Lake Cnty.*, 926 N.E.2d 524.

In 2007, in obvious response to the United States Supreme Court's holding in *Jones v. Flowers*, the Indiana General Assembly amended the pre-tax sale notice statute, Ind. Code Ann. § 6-1.1-24-4 (West, Westlaw current through June 29, 2013, excluding P.L. 205-2013). Prior to the amendment, the notice statute simply required the auditor to send notice by certified mail to the owner or owners at their last known address. *See* Ind. Code Ann. § 6-1.1-24-4 (2006) (amended 2007). As amended, I.C. § 6-1.1-24-4 provides in relevant part as follows:

> (a) Not less than twenty-one (21) days before the earliest date on which the application for judgment and order for sale of real property eligible for sale may be made, the county auditor shall send a notice of the sale by certified mail, return receipt requested, to:
>> (1) the owner of record of real property with a single owner; or
>> (2) at least one (1) of the owners, as of the date of certification, of real property with multiple owners;
> at the last address of the owner for the property as indicated in the records of the county auditor on the date that the tax sale list is certified. In addition, the county auditor shall mail a duplicate notice to the owner of record, as described in subdivisions (1) and (2), by first class mail to the owners from whom the certified mail return receipt was not signed and returned. . . . *If both notices are returned due to incorrect or insufficient addresses, the county auditor shall research the county auditor records to determine a more complete or accurate address.*

(emphasis supplied). Thus, the amended statute codifies the Supreme Court's holding that due process requires the State to take additional steps to notify a property owner of an impending tax sale when mailed notice is returned unclaimed. *See Jones v. Flowers*, 547 U.S. 220. Pursuant to the statute, the county auditor has three progressive duties with respect

7

to providing notice of an impending tax sale: (1) first, the auditor is required to send notice to the owner by certified mail at the address listed for the owner in the auditor's records, (2) second, if the return receipt is not signed and returned, the auditor is required to send a duplicate notice by first class mail to the same address, and (3) finally, if both notices are returned due to an incorrect or insufficient address, the auditor's office is required to search its records for a more complete or accurate address. I.C. § 6-1.1-24-4.

Here, the trial court found that the auditor's office (through its agent, SRI) sent notices, first by certified mail and then by first class mail, and that both notices were returned, thereby triggering the auditor's duty to search his records for a more complete or accurate address. The trial court found further that the auditor's office failed to search its records as required by statute. Nevertheless, the trial court upheld the tax sale based on its conclusion that any such search would have been futile. Specifically, the trial court found as follows:

> 2. Farmers Mutual was the true owner of the Property despite the scrivener's error in the Corporate Warranty Deed that conveyed title to Farmers Mutual. . . .
>
> 3. Because the pre-tax sale notice sent by certified mail and the Duplicate Notice sent by regular mail were "returned", the Auditor was required by Ind. Code § 6-1.1-24-4 to research his records to determine an accurate address for Farmers Mutual. The Auditor did not conduct the required search because SRI, the Auditor's agent, claimed the Duplicate Notice was never returned.
>
> 4. However, had the Auditor researched his own records under the name of the owner of record, Farmers Mutual Insurance Company of Grant and Blackford Counties, Inc., the Auditor would not have discovered an alternative address for Farmers Mutual because Farmers Mutual had never provided the Auditor with a corrected or new address as it relates to the Property.

8

5. While Ind. Code § 6-1.1-24-4 does place a duty upon the Auditor to "research" his records in an attempt to discover a more complete or accurate address for the owner, it is inconceivable that the legislature intended for the Auditor to "research" names that are <u>similar to</u> that of the property owner in an effort to ascertain a better address for the owner. Accordingly, the fact that the Auditor did not research his own records for a better address is irrelevant.

*Appellant's Appendix* at 27.

Thus, the trial court noted that the auditor had not carried out the duties imposed I.C. § 6-1.1-24-4, but determined that the failure was excusable because compliance with the statute would not have resulted in Farmers Mutual actually receiving notice. Putting aside the question of whether the auditor's office would have discovered an alternate address for Farmers Mutual had it performed the requisite search, we cannot agree that noncompliance with the statute's requirement that the auditor's office search its records may be excused if it is later determined that such a search would have been fruitless.[2]

Because I.C. § 6-1.1-24-4 was amended in response to the Supreme Court's decision in *Jones v. Flowers* and for the purpose of codifying the due process principles set forth in that case, we interpret the statute with the reasoning of that case in mind. In *Jones v. Flowers*, the Court noted that "[d]ue process does not require that a property owner receive actual notice before the government may take his property." 547 N.E.2d at 226. Instead, it is

---

[2] We note, however, that under the facts of this case, it is not at all apparent to us that the auditor's office would not have discovered an alternate address for Farmers Mutual had it conducted the requisite search of its records. Depending on the abbreviations and search terms used, the auditor's office might have discovered the address for the Office Property. Moreover, although the auditor's records listed the owner of the Office Property as "Farmers Mutual Insurance Co" instead of "Farmers Mutual Ins Co of Grant & Blackford Counties Inc.", the auditor might nevertheless have made the connection and sent notice to the mailing address for the owner of the Office Property. Any conclusions with respect to what information the auditor's office might have discovered and what it would have done with that information are purely speculative and based on hindsight. Our holding today will eliminate the need for trial courts to engage in such guesswork.

9

sufficient if notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 399 U.S. at 314). And "when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it[.]" *Id.* at 229 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 399 U.S. at 315).

Thus, in the due process analysis, the focus of the inquiry is not on the ultimate result of the auditor's efforts, i.e., whether the landowner has received actual notice. Instead, the focus is on the efforts themselves, and whether they are consistent with the actions of one desirous of actually informing the landowner of the impending tax sale. We conclude that the same is true of the statute. When both pre-tax sale notices are returned due to an incorrect or insufficient address, both due process and I.C. § 6-1.1-24-4 require further action from the auditor. The statute prescribes the specific action the auditor must take in such a case—the auditor's office must search its records for a more accurate or complete address. Whether a search of the auditor's records would have produced an alternate address and resulted in Farmers Mutual receiving actual notice in this case is not the salient question; rather, the question is whether the auditor's office performed the duties imposed by the statute. In this case, it is undisputed that it did not. Accordingly, the trial court erred in denying the petition to set aside the tax deed based on its conclusion that the auditor's failure to search his records was, in essence, harmless.

The trial court also concluded that Farmers Mutual was not entitled to have the tax deed set aside due to its failure to comply with its statutory obligation to notify the auditor's office of its correct address. Specifically, the trial court found as follows:

6. As further set forth in Ind. Code § 6-1.1-24-4, "Failure by an owner to receive or accept the notice required by this section does not affect the validity of the judgment and order. The owner of the real property shall notify the county auditor of the owner's correct address." Farmers Mutual failed to meet its obligation to notify the Auditor of the correct address under the statute.
7. Any confusion as to the proper name or address of Farmers Mutual was caused solely by Farmers Mutual's failure to correct the flawed deed under which the Property was conveyed[3] or update its own address with the Auditor relative to the Property.

*Appellant's Appendix* at 27-28.

We note, as did the trial court, that I.C. § 6-1.1-24-4 provides that "[t]he owner of real property shall notify the county auditor of the owner's correct address."[4] The statute does not, however, indicate that a property owner's failure to update his or her mailing address relieves the county auditor of his duties under the statute. Indeed, if we were to adopt such an approach, the requirement that the auditor's office search its records for a more accurate or complete address in the event that the pre-tax sale notices are returned due to an incorrect

---

[3] We are at a loss as to how Farmers Mutual's failure to correct the error in the deed—i.e., the erroneous inclusion of the abbreviation "Inc." at the end of its name—could have caused any actual confusion or had any bearing on the address to which notice was sent in this case, as the auditor's office did not conduct the requisite search of its records. The analysis might be different had the auditor's office searched its records but been unable to find an alternate address for Farmers Mutual or unable to link an alternate address to Farmers Mutual due to the error in the deed. But here, the auditor's office did not conduct a search at all.

[4] We also note that I.C. § 6-1.1-24-4 provides that the auditor's "failure to obtain a more complete or accurate address does not invalidate an otherwise valid sale." This provision clearly applies only in situations where the auditor has, in fact, carried out his statutory duty to search his records, but been unable to locate an alternate address. Additionally, I.C. § 6-1.1-24-4 goes on to provide that "[f]ailure by an owner to receive or accept the notice required by this section does not affect the validity of the judgment and order." This is nothing more than a statutory acknowledgement that a lack of actual notice to the landowner does not invalidate a tax sale, so long as the attempts at notice are reasonably calculated to provide actual notice.

11

or insufficient address would be meaningless; this is so because the very fact that the mailings have been returned means, in most cases, that the property owner has failed to provide a correct address.

Moreover, in *Jones v. Flowers*, the Supreme Court rejected any suggestion that a landowner's failure to comply with a statutory obligation to keep his address updated forfeited his right to constitutionally sufficient notice. Although we decide this case on the basis of Indiana's statutory notice requirements, the purpose of I.C. § 6-1.1-24-4 is to codify the applicable due process protections and instruct the auditor on how to provide constitutionally sufficient notice. Thus, to interpret the statute in a manner that conflicts with or provides less protection than the Due Process Clause would frustrate its clear legislative purpose. *See Maser v. Hicks*, 809 N.E.2d 429, 432 (Ind. Ct. App. 2004) ("[t]he cardinal rule of statutory construction is to determine and give effect to the true intent of the legislature"). Accordingly, we cannot conclude that a landowner's failure to provide the auditor's office with a correct mailing address excuses the auditor's failure to carry out his duties under I.C. § 6-1.1-24-4.

Nevertheless, Jewell argues that Farmers Mutual is seeking equitable relief under T.R. 60(B) and, because Farmers Mutual failed to keep its address updated, it is barred from relief under the doctrine of unclean hands. As an initial matter, we note that it has often been said that a ruling on a T.R. 60(B) motion for relief from judgment is committed to "the equitable discretion of the trial court." *See, e.g.*, *Fairrow v. Fairrow*, 559 N.E.2d 597, 599 (Ind. 1990). In the context of actions to defeat tax deeds under I.C. § 6-1.1-25-16, however, T.R. 60(B)

12

merely provides a procedural mechanism for asserting a claim under the statute.. *Swami, Inc. v. Lee*, 841 N.E.2d 1173 (Ind. Ct. App. 2006), *trans. denied*. Moreover, where a tax deed is void under I.C. § 6-1.1-25-16(7) due to a lack of substantial compliance with statutory notice procedures, the trial court exercises no discretion and is required to set aside the tax deed. *Lindsey v. Neher*, 988 N.E.2d 1207.

Indeed, the cases on which Jewell relies in support of its argument that the doctrine of unclean hands precludes setting aside the tax deed are inapposite because they involve situations in which the petitioners sought relief on purely equitable grounds, as opposed to seeking relief under I.C. § 6-1.1-25-16. In *Swami, Inc. v. Lee*, 841 N.E.2d 1173 (Ind. Ct. App. 2006), the petitioner did not assert any defect under I.C. § 6-1.1-25-16, but nevertheless sought equitable relief because it relied on a misrepresentation made by an employee of the county treasurer's office that no taxes were due on the subject property. This court concluded that the trial court did not err in declining to set aside the tax deed on equitable grounds because the landowner had unclean hands due to its failure to keep its address updated. *See also Tajuddin v. Sandhu Petroleum Corp. No. 3*, 921 N.E.2d 891 (Ind. Ct. App. 2010) (concluding that notice had been provided, but affirming trial court's award of equitable relief to party seeking to set aside tax deed, concluding that under the circumstances, the landowner's failure to keep its address updated did not establish unclean hands).[5] These cases are easily distinguishable because here, Farmers Mutual seeks relief

---

[5] Additionally, *Tax Certificate Invs., Inc. v. Smethers*, 714 N.E.2d 131 (Ind. 1999), *Elizondo v. Read*, 588 N.E.2d 501 (Ind. 1992), *Swami, Inc. v. Lee*, 841 N.E.2d 1173, and *Combs v. Tolle*, 816 N.E.2d 432 (Ind. Ct. App. 2004), were all decided prior to the 2007 amendment to I.C. § 6-1.1-24-4 requiring the auditor's office to

based on one of the statutory grounds enumerated in I.C. § 6-1.1-25-16—namely, that the notices required by I.C. § 6-1.1-24-4 were not provided in substantial compliance with that section.

For all of these reasons, we conclude that the trial court's judgment denying Farmers Mutual's petition to set aside the tax deed was clearly erroneous. We therefore reverse the judgment of the trial court and remand with instructions to grant Farmers Mutual's petition.

Judgment reversed and remanded with instructions.

ROBB, C.J., and CRONE, J., concur.

---

research its records to determine a more complete or accurate address in the event both mailed notices are returned due to incorrect or insufficient addresses.