

FILED

Apr 17 2023, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Michael D. Kvachkoff | Christian W. Bartholomew |
| Crown Point, Indiana | Burke Costanza & Carberry LLP |
| | Merrillville, Indiana |

# I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marion Assets 2020, LLC, | April 17, 2023 |
| *Appellant/Cross-Appellee-Petitioner,* | Court of Appeals Case No. 22A-TP-1681 |
| v. | Appeal from the Lake Superior Court |
| Fiascone Family LP, | The Honorable Stephen E. Scheele, Judge |
| *Appellee/Cross-Appellant-Respondent* | Trial Court Cause No. 45D05-2111-TP-2051 |

**Opinion by Judge Mathias**
Judges Bradford and Kenworthy concur.

**Mathias, Judge.**

[1]     Marion Assets 2020, LLC ("Marion Assets") appeals and the Fiascone Family LP ("Fiascone Family") cross-appeals the Lake Superior Court's order setting aside a tax deed on equitable grounds after the deed had been issued to Marion

Assets. Between them, the parties raise three issues for our review, which we consolidate and restate as the following two issues:

> 1. Whether Marion Assets provided constitutionally adequate notice to Fiascone Family to support the issuance of the tax deed.

> 2. Whether the trial court abused its discretion when it set aside the tax deed notwithstanding its finding that Marion Assets had provided Fiascone Family with constitutionally adequate notice.

We affirm the trial court's conclusion that Marion Assets provided Fiascone Family with constitutionally adequate notice in obtaining the tax deed. We reverse the trial court's conclusion to set aside the tax deed on equitable grounds, and we remand with instructions for the court to deny Fiascone Family's motion to set aside the tax deed.

## Facts and Procedural History

In March 2019, Fiascone Family acquired condominium 3B at 1640 White Oak Circle in Munster. Marty Fiascone and his father are the principals of Fiascone Family. Marty lives in Florida, and he and his father used the condominium for "personal purposes" when they were in the Chicago area. Appellant's App. Vol. 2, p. 3. During its ownership of the condominium, Fiascone Family's mailing address on file with the Lake County Auditor was 7593 Gathering Drive #806, Reunion, Florida 34747 ("the Florida address").

After Fiascone Family failed to pay its property taxes on the condominium, the Lake County Treasurer initiated tax-sale proceedings, and Marion Assets

purchased the tax sale certificate for the condominium at an ensuing public auction. The tax sale certificate identified the condominium's "[c]ommonly known" address only by its street address, without reference to the unit number, although the certificate's immediately adjacent parcel description identified the property as "Unit 3B in Building 10" at that address. *Id.* at 18.

[5] After obtaining the tax sale certificate, Marion Assets did a title search, which confirmed that Fiascone Family was the only party of record with an interest in the condominium and further confirmed Fiascone Family's Florida address. *Id.* at 51. In February 2021, pursuant to Indiana Code section 6-1.1-25-4.5(d) (2020), Marion Assets mailed notice of the Fiascone Family's redemption rights via certified mail to both the Florida address and the condominium's "commonly known" address, i.e., its street address without the unit number. At the same time, Marion Assets mailed the same notices to those addresses via first-class mail. The United States Postal Service returned the certified letter and first-class letter that had been sent to the Florida address as "[v]acant" and "unable to forward." *Id.* at 28, 55-56. The certified letter sent to the condominium's street address was returned as an "insufficient address," but the first-class letter was not returned. *Id.* at 57.

[6] After having those letters returned, in March, Marion Assets sent a process server to the condominium's street address to post the redemption notice at the property. The process server went to the street address and observed several buildings. He located the only building that had the location number "1640" on it, and he further observed that that building had "multiple doors entering into

[it]." Tr. Vol. 2, pp. 93-94. Specifically, the process server observed three doors on the building. He posted the notice on "the center door," which was "closest to the garages" and was being used by "more people . . . than any other" door. *Id.* at 94. The center door also had "1640" written across the top of the door. *Id.* at 93. The process server posted the notice in a fashion to keep it from being blown away by the wind. The notice included the parcel description in bold font on the first page, which identified the condominium at issue as "Unit 3B in Building 10." Appellant's App. Vol. 2, p. 59.

[7] In July, Marion Assets again sent redemption notices via first-class mail to the Florida address and the condominium's street address. Both of those mailings were returned for the same reasons as the February mailings. Following the expiration of the redemption period, in October Marion Assets sent notices pursuant to Indiana Code section 6-1.1-25-4.6 of the filing of its petition to issue a tax deed. Marion Assets sent those notices simultaneously via certified mail and first-class mail to both the Florida address and the condominium's street address. This time, the certified mail sent to the Florida address was returned as "unclaimed." *Id.* at 65. The certified mail sent to the condominium's street address was returned for an insufficient address. Neither of the first-class mailings was returned.

[8] Marion Assets petitioned for the issuance of a tax deed, which the trial court granted in February 2022. A few weeks later, Marion Assets attempted to change the locks at the condominium, and the condominium's management company contacted Marty. Marty then sought counsel, and, in April, Fiascone

Family filed a Trial Rule 60(B) motion to set aside the tax deed. In support of that motion, Fiascone Family argued that Marion Assets had not served Fiascone Family with constitutionally adequate notice and, thus, the tax deed had been issued in violation of Fiascone Family's due process rights.

[9] The trial court held a hearing on Fiascone Family's Rule 60(B) motion. At that hearing, the parties stipulated to Marion Assets' numerous attempts to serve the notices on Fiascone Family, and the process server testified about his posting of the redemption notice at the property. Marty also testified at that hearing and stated that the Florida address "is his commonly used address" and that "he had no knowledge of any problems receiving mail at that address," yet "none of [Marion Assets' attempted] notices were actually received" by Fiascone Family. *Id.* at 4-5. Marty also testified that the door on which the process server had posted the redemption notice "was not commonly used by residents." *Id.* at 4.

[10] Following the evidentiary hearing, the trial court concluded that Marion Assets had "complied with the provisions of [the Indiana Code] by sending notice via certified mail at the 'last address of the owner for the property, as indicated in the records of the county auditor.'" *Id.* at 6 (quoting I.C. § 6-1.1-25-4.5(d)). The court further concluded that Marion Assets

> has satisfied standards of due process in providing notices to [Fiascone Family] concerning the tax sale. In addition to the statutorily required certified mailings to [Fiascone Family's] address on file with the Lake County Auditor, [Marion Assets] took the additional steps of sending notice via first class mail and posting notice at the Property address. [Marion Assets] also sent

> a second round of 4.5 Notices subsequent to sending the first set of returned notices. Such steps are indicative of a desire to actually inform the owner of the pendency of the tax sale and satisfy due process requirements, which do not require actual notice.

*Id.* at 7. However, the court then concluded that Fiascone Family's failure to actually receive any of Marion Assets' notices presented the court with an "exceptional" case that justified equitable relief. *Id.* Thus, the court set aside the tax deed, reopened the redemption period through August 1, and directed Fiascone Family to pay the redemption amount it would have paid had the original redemption period not expired. This appeal ensued.

## Discussion and Decision

[11]  Marion Assets appeals and Fiascone Family cross-appeals the trial court's decision to set aside the tax deed on equitable grounds. We first address Fiascone Family's argument on cross-appeal that the trial court erred when it found that Marion Assets' attempts at notice were constitutionally adequate. We then turn to Marion Assets' argument on appeal that the trial court abused its discretion in setting aside the tax deed notwithstanding Marion Assets' compliance with due process.

### 1. The trial court did not err when it found that Marion Assets had provided Fiascone Family with constitutionally adequate notice.

[12]  Fiascone Family argues that Marion Assets' attempts at notice were constitutionally inadequate. "A tax deed is void if the former owner was not given constitutionally adequate notice of the tax sale proceedings," including

notice of the right of redemption under Indiana Code section 6-1.1-25-4.5 and notice of the petition for the issuance of a tax deed under Indiana Code section 6-1.1-25-4.6. *Schaefer v. Kumar*, 804 N.E.2d 184, 192 (Ind. Ct. App. 2004), *trans. denied*. Although Fiascone Family's Trial Rule 60(B) motion did not identify the specific subsection of the Rule on which its motion was premised, the substance of the motion and Fiascone Family's arguments to the trial court was that the issuance of the tax deed was void under Rule 60(B)(6). *See Anderson v. Wayne Post 64, Am. Legion Corp.*, 4 N.E.3d 1200, 1206 (Ind. Ct. App. 2014) (quoting *Munster v. Groce*, 829 N.E.2d 52, 57 (Ind. Ct. App. 2005)), *trans. denied*.

[13] As we have explained:

> The standard of review for the granting or denying of a T.R. 60(B) motion is limited to whether the trial court abused its discretion. *Freels v. Winston* (1991), Ind. App., 579 N.E.2d 132, 135, *reh. denied, trans. denied*. However, a motion under [Trial] Rule 60(B)(6) alleging the judgment is void requires no discretion on the part of the trial court because either the judgment is void or it is valid. *Schoffstall v. Failey* (1979), 180 Ind. App. 528, 389 N.E.2d 361, 363. Void judgments can be attacked, directly or collaterally, at any time. *International Alliance of Theatrical Stage Employees v. Sunshine Promotions, Inc.* (1990), Ind. App., 555 N.E.2d 1309, 1315.

*Id.* at 1205 (quoting *Santiago v. Kilmer*, 605 N.E.2d 237, 239 (Ind. Ct. App. 1992), *trans. denied*). Thus, where, as here, the trial court found facts after an evidentiary hearing on a Rule 60(B)(6) motion to set aside a tax deed, we review the trial court's findings of fact for clear error. *Ind. Land Trust Co. v. XL Invest. Props., LLC*, 155 N.E.3d 1177, 1182 (Ind. 2020). As for whether the trial

court's findings are sufficient to demonstrate constitutionally adequate notice, our review is de novo. *Id.*

[14] To comply with due process, the tax-sale purchaser must give notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Marion Cnty. Auditor v. Sawmill Creek, LLC*, 964 N.E.2d 213, 218 (Ind. 2012). "'But if with due regard for the practicalities and peculiarities of the case these [notice] conditions are reasonably met, the constitutional requirements are satisfied.'" *Id.* at 219 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). Ultimately, the issue is not the former property owner's actual knowledge, but whether the purchaser "gave notice under the circumstances of this case in a manner reasonably calculated to inform" the former owner of the pending loss of its interest in the real estate. *See Iemma v. JP Morgan Chase Bank, N.A.*, 992 N.E.2d 732, 741-42 (Ind. Ct. App 2013).

[15] In *Jones v. Flowers*, 547 U.S. 220, 234 (2006), the Supreme Court of the United States held that, when a state attempts to give notice of a tax sale via certified mail that is returned "unclaimed," the state is required to take "additional reasonable steps to notify [the property owner of the sale], if practicable to do so." The Court stated that, "[w]hat steps are reasonable in response to new information depends upon what the new information reveals." *Id.* For example, the return of a certified letter as "unclaimed" might simply mean that the property owner "was not home when the postman called and did not retrieve

the letter at the post office, or that [the property owner] no longer resided at that address." *Id.* The Court added that, in response to such a situation, "[o]ne reasonable step . . . would be for the [s]tate to resend the notice by regular mail, so that a signature was not required." *Id.* Another "reasonable followup measure[]" might include "post[ing] notice on the front door" of the property. *Id.* at 235.

[16] The Indiana Supreme Court has applied *Jones* to Indiana tax sales in two opinions of particular relevance here. First, in *Sawmill Creek*, our Supreme Court considered the constitutionality of the Marion County Auditor's attempts to provide notice of tax-sale proceedings to the property owner of record where the property owner's name on file was misidentified as "Saw Creek" rather than "Sawmill Creek." 964 N.E.2d at 214-15. The auditor's attempts to send certified mail to the owner were returned as "NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD." *Id.* at 215. The auditor then published notice in a local newspaper, on the auditor's website, and outside of the county clerk's office.

[17] After the property was sold, the auditor employed a title company to conduct additional research on the property, but the title company could not locate a "Saw Creek" business entity. *Id.* at 216. Two post-sale notices were again sent via both certified and first-class mail to the address on file, but both mailings were returned as undeliverable. Only when the new property owner's "for sale" signs appeared on the property did the original owner become aware of the sale and sued to set aside the tax deed. *Id.*

[18]   Applying *Jones*, our Supreme Court held that the auditor had satisfied the owner's due process rights because "the [a]uditor's actions were reasonably calculated to provide notice to [the owner]." *Id.* at 221. Significantly, the court noted that it would have been unreasonable for the auditor to re-send the *same* notice via first-class mail after the auditor had received the prior certified mail as not deliverable at that address. *Id.* at 220. The court also noted that posting notice on the bare, unimproved property would not have been a reasonable means to inform the property owner. *Id.* at 221. However, the court was satisfied that the auditor had taken the required "additional reasonable steps" after receiving the returned certified mail when the auditor published those notices, "mailed the post-sale and issuance-of-a-tax-deed notices" via certified mail to the address of record (although those were also returned), and engaged a title search company to search government records and the phonebook for additional addresses for the owner of record. *Id.* at 220-21.

[19]   Similarly, in *Indiana Land Trust*, a county auditor simultaneously sent notice of an impending tax sale via certified letter and via first-class mail to the owner's address of record. The owner, however, had moved from its original address several times and had not updated its tax address with the county auditor. The auditor's certified letter was returned as undeliverable, but the first-class mail was never returned. The auditor did a record search for any other addresses for the owner but eventually published the notice in a local newspaper. Thereafter, the original owner learned of the tax sale after the purchaser had filed a quiet

title action. The original owner then moved to set aside the tax deed due to insufficient notice.

[20] Our Supreme Court, following *Jones*, held that the auditor's simultaneous mailing of the notice via certified and first-class mail satisfied the original owner's due process rights. *Ind. Land Trust*, 155 N.E.3d at 1189. As our Supreme Court explained:

> While the certified mail was returned . . . , there is no evidence the first-class mail was ever returned . . . . This meant either the mail was received by its intended recipient or simply lost to time. Nevertheless, the Supreme Court in *Jones* observed that sending notice via regular mail likely increases the chances of actual notice. [547 U.S.] at 236, 126 S. Ct. at 1719. Given actual notice is not required, we do not think the Auditor should be left to speculate whether the first-class mail was truly delivered, especially when it was not returned to its sender.
>
> Regardless, [the original owner] argues the distinction between "Unclaimed" mail and mail returned as "Not Deliverable as Addressed—Unable to Forward" made notice by first-class mail unreasonable. *See Sawmill Creek*, 964 N.E.2d at 219 n.6. The first-class mail in this case, however, was sent contemporaneously with the certified letter. This is unlike the facts in *Sawmill Creek* where we made particular note that following up with first-class mail after a certified letter was returned as undeliverable would be unreasonable based on the auditor's new knowledge that the certified letter was not deliverable at the listed address. *See id.* at 219-20. One could reasonably assume the unreturned first-class mail in this case indicated to the Auditor that the mail was received by the intended recipient. We do not think that under these circumstances, the Auditor was required to speculate any further.

Perhaps the circumstances would be different if both the certified letter and first-class mail were returned . . . . This knowledge— that the tax notice address was more than likely incorrect— would certainly require additional reasonable steps to notify [the original owner] if practical to do so. *See Jones*, 547 U.S. at 234, 126 S. Ct. at 1718. And perhaps under those facts, an auditor would satisfy due process by searching its internal records. But those circumstances are simply not present here. In addition to the first-class mail, the Auditor . . . performed a skip trace search for a better address and published notice in the newspaper. These combined actions, at least under the circumstances present in this case, satisfy the minimal due process requirements discussed in *Jones* and subsequent caselaw in Indiana.

While the Auditor certainly could have done more, the Constitution does not require more than the actions taken in this case. . . .

*Id*.

[21] Following that authority, we conclude that Marion Assets' attempts to provide notice to Fiascone Family were constitutionally adequate. First, after purchasing the tax-sale certificate, Marion Assets performed a title search of the property. That title search confirmed that Fiascone Family was the only interested party of record and further confirmed that no other address of record for Fiascone Family existed besides the Florida address.

[22] Second, Marion Assets sent the notice of the Fiascone Family's redemption rights simultaneously via certified mail and first-class mail both to the Florida address of record and the condominium's "commonly known" address of record. Both of the letters sent to the Florida address were returned as

undeliverable because the location at that address was "vacant" and the post office was "unable to forward" the letters. Appellant's App. Vol. 2, pp. 28, 55-56. However, while the certified letter to the condominium's street address was returned for an "insufficient address," the first-class letter sent at the same time to the same address was not returned.

[23] Following the return of three of the four initial redemption notices, Marion Assets sent a process server to post the notice at the condominium's location, the one location where any of the four letters may have been received. The process server posted the notice on the central, most-used door to the unit building. And the posted notice conspicuously identified the unit at issue as unit 3B in that building.

[24] Although Marion Assets again resent the redemption notices via first-class mail to both the Florida address and the condominium's street address after the process server had posted the notice at the property, we need not take those additional mailings into account. Following *Jones* and *Indiana Land Trust*, we hold that Marion Assets provided constitutionally adequate notice when, following a title search, it simultaneously sent four letters, two via certified mail and two via first-class mail, to both the Florida address and the condominium's street address, one of which was not returned to Marion Assets. And, upon learning that the first-class letter sent to the condominium's street address was not returned, Marion Assets had a process server post the redemption notice at that same location.

As for Marion Assets' ensuing attempts to provide Fiascone Family with notice of the petition for the issuance of the tax deed several months later, after the expiration of the redemption period, Marion Assets simultaneously mailed certified and first-class letters to both the Florida address and the condominium's street address. Although both of the certified letters were returned, neither of the first-class letters were. Again, following *Jones* and *Indiana Land Trust*, we conclude that Marion Assets provided Fiascone Family with constitutionally adequate notice of its petition for the issuance on the tax deed.

Further, unlike in *Sawmill Creek*, these additional notices were not the "same" as the redemption notices. *See* 964 N.E.2d at 220. Rather—necessarily, as these notices could not be sent until the redemption period had expired—these subsequent, statutorily required notices were sent in October 2021, eight months after the initial redemption notices were sent. It was not unreasonable for Marion Assets to start the notice process over at this point, and, upon not having either of these first-class mailings returned, Marion Assets was not obliged to speculate that the delivery of those letters had failed. *Ind. Land Trust*, 155 N.E.3d at 1189.

Still, Fiascone Family argues that, when Marion Assets received the certified letters sent to the condominium's address back as an "insufficient address," Marion Assets should have specifically amended the "commonly known" address to include the unit number based either on a visit to the property or on a reading of the parcel description. Appellee's Br. at 12-13. But neither Marion

Assets' February 2021 first-class letter nor its October 2021 first-class letter, sent to the same address at the same time as the certified letters, was returned. Based on those letters not being returned, we cannot say that Marion Assets' reliance on the "commonly known" address was unreasonable. *See Ind. Land Trust*, 155 N.E.3d at 1189; *see also Tax Cert. Invests., Inc. v. Smethers*, 714 N.E.2d 131, 134 (Ind. 1999) ("the burden of notifying the county taxing authority of the taxpayer's correct address [is] upon the taxpayer. If . . . notice reaches this address, then notice is sufficient[.]") (quoting *Holland v. King,* 500 N.E.2d 1229, 1237 (Ind. Ct. App. 1986)). We therefore affirm the trial court's conclusion that Marion Assets provided Fiascone Family with constitutionally adequate notice.

### 2. The trial court abused its discretion when it set aside the tax deed on equitable grounds.

[28] We next consider Marion Assets' argument on appeal that the trial court abused its discretion when it set aside the tax deed on equitable grounds. The trial court's decision to grant equitable relief is reviewable only for an abuse of discretion. *State v. Collier*, 61 N.E.3d 265, 268 (Ind. 2016). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* (quotation marks omitted). We will not reweigh the evidence on appeal. *Id.*

[29] However, the equitable power of our trial courts is not unlimited. As our Supreme Court has long made clear:

Equity has the power, where necessary, to pierce rigid statutory rules to prevent injustice. *Wabash Valley Coach Co. v. Turner* (1943), 221 Ind. 52, 46 N.E.2d 212, *cert. denied*, 319 U.S. 754, 63 S. Ct. 1167, 87 L. Ed. 1707. *But where substantial justice can be accomplished by following the law, and where the parties' actions are clearly governed by the rules of law, equity follows the law*. In this case the rights of the parties are clearly governed by the statute; and no injustice will result from following such statute. Therefore, equity in this case, must follow the law, there being no equitable reason for not doing so. *See* 2 Pomeroy's Equity Jurisprudence, §§ 425-27 (1941 Edition).

*State ex rel. Root v. Cir. Ct. of Allen Cnty.*, 259 Ind. 500, 289 N.E.2d 503, 506-07 (1972) (emphasis added; original emphasis removed) (quoting *Metro. Sch. Dist. of Sw. Parke v. Vaught*, 249 Ind. 412, 417 233 N.E.2d 155, 158 (1968)).

[30] Further:

When interpreting a statute, we begin by reading its words in their plain and ordinary meaning, taking into account "the structure of the statute as a whole." *ESPN, Inc. v. Univ. of Notre Dame Police Dep't,* 62 N.E.3d 1192, 1195 (Ind. 2016). Mindful of what the statute says and what it doesn't say, we aim to "avoid interpretations that depend on selective reading of individual words that lead to irrational and disharmonizing results." *Id.* (quotation and citation omitted). Rather, we presume the "legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Rodriguez v. State*, 129 N.E.3d 789, 793 (Ind. 2019) (quotation and citation omitted). Ultimately, "our goal is to determine and give effect to" the legislature's intent. *State v. Int'l Bus. Machines Corp.*, 964 N.E.2d 206, 209 (Ind. 2012) (citation omitted).

*Town of Linden v. Birge*, ___ N.E.3d ___, 2023 WL 2383795, at *5 (Ind. Mar. 7, 2023).

[31] Here, three statutes are of particular relevance in determining the scope of a trial court's equitable power to set aside a tax deed. First, Indiana Code section 6-1.1-25-4 ("section 4") provides various redemption periods in the event of a tax sale. As relevant here, section 4 provided that Fiascone Family's "period of redemption" was "one (1) year after the date of sale" of the condominium to Marion Assets. I.C. § 6-1.1-25-4(a)(1).

[32] Relatedly, Indiana Code section 6-1.1-25-4.6(f) ("section 6(f)") states:

> Not later than sixty-one (61) days after the petition [for the issuance of a tax deed] is filed under subsection (a), *the court shall enter an order directing the county auditor . . . to issue to the petitioner a tax deed if the court finds that the following conditions exist*:
>
> (1) The time of redemption has expired.
>
> (2) The tract or item of real property has not been redeemed from the sale before the expiration of the period of redemption specified in section 4 of this chapter.
>
> (3) Except with respect to a petition for the issuance of a tax deed under a sale of the certificate of sale on the property under IC 6-1.1-24-6.1 or IC 6-1.1-24-6.8, or with respect to penalties described in section 4(j) of this chapter, all taxes and special assessments, penalties, and costs have been paid.

(4) The notices required by this section and section 4.5 of this chapter have been given.

(5) The petitioner has complied with all the provisions of law entitling the petitioner to a deed. . . .

(Emphasis added.) Or, as our Supreme Court has summarized it, "a purchaser who has complied with the statutory requirements is entitled to a tax deed." *Smethers*, 714 N.E.2d at 133.

[33] We have held that the identically worded predecessor statute to section 6(f) "clearly mandates the trial court to enter an order issuing a tax deed within sixty-one days of the filing of the Petition if the petitioner has met all necessary conditions." *Strezovski v. Frazee*, 818 N.E.2d 505, 509 (Ind. Ct. App. 2004). In *Strezovski*, although the tax sale purchaser had complied with the statutory requirements entitling it to the issuance of a tax deed, the trial court granted the original property owner an additional ninety-eight days beyond the one-year statutory redemption period to redeem the property.

[34] On appeal, we held that the trial court abused its discretion in extending the redemption period:

> [Section 6(f) is] silent in allowing the trial court to exercise its discretion in granting additional time before ordering the issuance of a tax deed. In the instant case, the trial court did just that: after granting the Appellants' Petition, the trial court nevertheless allowed the [original owners] extra time to redeem the property by awarding them an additional 98 days beyond the one-year limitation for redemption of property.

Consequently, based on the clear and unambiguous language [of section 4 and section 6(f),] we conclude that *the trial court does not have the discretion to extend the period of redemption beyond the one-year limitation*.

*Id.* (emphasis added).

[35]     However, a purchaser's entitlement to a tax deed upon its satisfaction of the statutory requirements notwithstanding, Indiana Code section 6-1.1-25-16 ("section 16") provides as follows:

A person may . . . defeat the title conveyed by a tax deed executed under this chapter *only if*:

(1) the tract or real property described in the deed was not subject to the taxes for which it was sold;

(2) the delinquent taxes or special assessments for which the tract or real property was sold were paid before the sale;

(3) the tract or real property was not assessed for the taxes and special assessments for which it was sold;

(4) the tract or real property was redeemed before the expiration of the period of redemption (as specified in section 4 of this chapter);

(5) the proper county officers issued a certificate, within the time limited by law for paying taxes or for redeeming the tract or real property, which states either that no taxes were due at the time the sale was made or that the tract or real property was not subject to taxation;

(6) the description of the tract or real property was so imperfect as to fail to describe it with reasonable certainty; or

(7) the notices required by IC 6-1.1-24-2, IC 6-1.1-24-4, and sections 4.5 and 4.6 of this chapter were not in substantial compliance with the manner prescribed in those sections.

(Emphasis added.) Thus, in addition to establishing the requirements to obtain a tax deed, the Indiana Code also provides an explicit, and limited, opportunity for the original property owner to defeat title conveyed by a tax deed.

[36]     For example, in *Farmers Mutual Insurance Co. v. M Jewell, LLC*, we held that a tax deed was void under section 16(7) due to a county auditor's "lack of substantial compliance with statutory notice procedures," which procedures where themselves the codification of constitutional requirements. 992 N.E.2d 751, 759 (Ind. Ct. App. 2013), *trans. denied*. Still, the purchaser argued that, because the trial court's judgment was ultimately an equitable one, we were required to defer to "the equitable discretion of the trial court" and affirm the trial court's refusal to set aside the tax deed. *Id.* We rejected the purchaser's argument, stating that, where a deed is void under section 16, "the trial court exercises no discretion and is required to set aside the tax deed." *Id.*

[37]     Our holdings in *Strezovski* and *Farmers Mutual* recognize that section 4, section 6(f), and section 16 are unambiguous; that the parties to those appeals were clearly governed by those rules of law; and that, accordingly, equity would

follow the law. However, our case law has supported the use of equitable relief when the basis alleged for setting aside a tax deed is premised not on a ground enumerated in section 16 but instead on a material misrepresentation during the statutory tax sale process. *See Town of Edinburgh v. Black*, 48 N.E.3d 340, 347 (Ind. Ct. App. 2015) (holding that the original property owner was entitled to equitable relief when he paid the amount the county auditor had represented to him to be the redemption amount, which turned out to be an incorrect amount); *Tajuddin v. Sandhu Petro. Corp.*, 921 N.E.2d 891, 895 (Ind. Ct. App. 2010) (holding that the original property owner was entitled to equitable relief where the tax assessment on the sold property had been misattributed to a different property owned by the owner, and which assessment the owner had paid); *Atkins v. Niermeier*, 671 N.E.2d 155, 158 (Ind. Ct. App. 1996) (holding that the trial court had the power in equity to order the county auditor to reissue a tax sale certificate to a purchaser when a party that had no substantial interest in the property, but who had represented otherwise to the purchaser, attempted to redeem the property); *see also Swami, Inc. v. Lee*, 841 N.E.2d 1173, 1177 (Ind. Ct. App. 2006) (original owner argued for equitable relief "because it relied on a misrepresentation made by an employee in the county treasurer's office, namely, that no taxes were due," and we affirmed the denial of that request in part due to the owner's unclean hands in not keeping its address with the county up to date).

[38] Here, in its motion to set aside the tax deed, Fiascone Family argued only that the required notices were not in compliance with the law, in apparent

accordance with section 16(7). Again, the trial court rejected Fiascone Family's argument, and properly so for the reasons explained in Issue One above. However, despite finding no grounds under section 16 to set aside the tax deed, the trial court nonetheless used its equitable authority to extend Fiascone Family's redemption period beyond the statutory timeframe provided for in section 4. In doing so, the court found that Fiascone Family's failure to receive "actual notice" presented the court with an "exceptional" case that justified equitable relief.[1] Appellant's App. Vol. 2, p. 7.

[39] We conclude that there is nothing in this record to support the trial court's assessment that this is an exceptional case. Following *Strezovski*, *Farmers Mutual*, and the unambiguous language of the Indiana Code, we hold that the trial court abused its discretion when it extended Fiascone Family's redemption period beyond the statutory timeframe even though Marion Assets had provided Fiascone Family with constitutionally adequate notice. Section 4 gave Fiascone Family one year to redeem the condominium, which Fiascone Family did not do. Section 16 gave Fiascone Family means to set aside the tax deed, a showing under which Fiascone Family has been unable to make. Further, Fiascone Family has not alleged a material misrepresentation in the course of the tax sale proceedings, and, thus, the trial court's invocation of equitable relief here is

---

[1] There is some suggestion in the record that setting aside a tax deed for equitable reasons happens not uncommonly in Lake County. *See* Tr. Vol. 2, pp. 124-25.

inconsistent with our precedent. Equity here should follow the law, and section 6(f) entitled Marion Assets to the tax deed.

[40] The trial court's *sua sponte* invocation of its equitable authority is problematic for another reason. Because Fiascone Family moved to set aside the tax deed only on the ground that it had not received constitutionally adequate notice, Marion Assets limited its response only to that argument. But, as Marion Assets notes in its appellate brief, had it been given notice and an opportunity to argue against a proposed equitable theory of relief, Marion Assets may have had a legitimate basis to argue that Fiascone Family had unclean hands. *See, e.g.*, *Swami, Inc.*, 841 N.E.2d at 1177 (affirming the denial of a motion to set aside a tax deed in part due to the original owner's unclean hands in not keeping its address with the county up to date). We therefore conclude that the trial court abused its discretion when it awarded Fiascone Family equitable relief and set aside Marion Assets' tax deed.

## Conclusion

[41] For all of the above-stated reasons, we affirm the trial court's conclusion that Marion Assets provided Fiascone Family with constitutionally adequate notice; we reverse the trial court's decision to set aside Marion Assets' tax deed notwithstanding that constitutionally adequate notice; and we remand with instructions for the trial court to deny Fiascone Family's motion to set aside the tax deed.

[42] Affirmed in part, reversed in part, and remanded with instructions.

Bradford, J., and Kenworthy, J., concur.